That brings us to our next case, which is United States v. Devon Archer. All right, so Mr. Schwartz, you've reserved two minutes for rebuttal, so that gives you eight to begin. You may proceed. Thank you. Good morning, and may it please the Court. It is common ground that a sentencing court has to find facts relevant to the application of the guidelines by a preponderance of the evidence, constrained only by the jury's explicit findings and any facts that are necessarily implicit in the verdict. Because the district court believed she was required to additionally defer to other fact finding that might have but did not necessarily underlie the verdict, she misapprehended her discretion and role and committed error. Further I have to say, I've read this a couple of times, and I mean, I've read the transcript, and it's not clear to me that that's what Judge Abrams did at all. I mean, she certainly used the language of, you know, implicit. She made a finding that the evidence was by a preponderance, that your client understood or was responsible for the full scope of the loss of the fraud. What more should she have said? I think it was very clear that when Judge Abrams used the word implicit, she was not talking about what was necessarily implicit in the verdict, and that certainly doesn't follow from her reasoning. She did use the standard preponderance, but made very clear that the evidence only supported the sentencing fact finding by a preponderance. I think, I'm just wondering, I'm stuck on, I too read this multiple times, and I'm stuck on the fact that why saying implicit isn't actually an indication of necessary, right? Like, she's saying, like, there's something that is so baked into it that it has to be part of what I ultimately conclude. What I think is going on is that you disagree with that, but we are supposed to be, like, you disagree that it is not necessarily baked in, but that's different than us deciding that she didn't do that. Well, I think, with respect, there are two flavors of the same thing. If you look at the colloquy at pages 21, 38, and 39 of the appendix, which is part of the sentencing transcript, as I begin my sentence remarks, I talk about the fact that Judge Abrams obviously feels that she is constrained here and doesn't feel free to evaluate the sentencing through her own lens, and she doesn't disagree with that. But you are using the word constrained. We had an opinion, and we told her to revisit it. I mean, so she was constrained. I don't think she was constrained by this court's decision. This court's decision was on a Rule 33 motion looking at, as John has said in Archer, the evidence in the light most favorable to the government, which is not, in any world, the proper standard for sentencing. She was constrained by the verdict and the facts necessarily implicit in the verdict. However, here, even if she felt that all of these facts were necessarily implicit, she was obviously incorrect, because the charge here, conspiracy in a broad fraud scheme, could have been proven in multiple ways, as the government argued. And so it couldn't have been the case that it was necessarily implicit in the verdict that, for example, Mr. Archer knew about the full loss about or the number of victims. And the best proof of that is the government acknowledged as to other defendants convicted of the very same scheme, they did not have complete knowledge. And so, well, yes, the verdict has force. And Judge Abrams was required, in light of this court's decision, to assume guilt and to assume that Mr. Archer had intent to defraud. She was not required to assume, and it is not necessarily implicit in the verdict, that he knew about any particular losses or any particular number of victims. And that's where there was error. I want to... Do you have any case that says that, or any precedent that says that it's actually a procedural error to defer to facts that the district court finds are implicit or necessary in the jury? Well, where a district court either misapprehends its discretion or miscalculates the guideline range, that is core procedural error. And so, I think it fits under those categories. I also want to point out, there was one other procedural error which was admittedly less developed in the briefing, which is... You got both of us are... We all sat up, okay. Yeah, and I raised this with the government this morning, and your honors may want some follow-up on it. Judge Abrams actually literally miscalculated the guideline range. If you look at pages 2131 through 2134 of the appendix, so the base offense level here is seven. She finds, looking at the facts that she believed were implicit in the verdict, plus 22 for losses, plus two for number of victims, that's 31, minus two for minor role, which everyone agreed was appropriate here. That gets you to a total offense level of 29. But on page 2134 and throughout the sentencing, she actually calculates guideline level 31, which is a difference between... It's about a two-year difference in the range. I raised that... So, I realized that only late last night in my final preparations for this argument. I raised it with the government this morning. They admittedly haven't had time to look at everything. I understand they're not sure if there was error because they haven't had time to look at it. They may be intending to press waiver. I don't think under the Supreme Court's precedent, there was waiver of an error that is this plain and that affected Ms. Archer's substantial rights. I'm sorry, counsel. When you said that you didn't adequately... You may not have fully developed it in your brief. Could you point us to a point in your brief where you did somewhat develop this? Well, I just want to be careful again because the government is going to, I believe, press waiver and that's not something that I've had the time to do the research on. No, no, no. I'm not asking you to concede anything. I'm just asking you to direct me to any pages in your blue brief, your reply brief. And if there is no point when you raise that, I'm not asking you to make any concession about what the consequence of that may be. But is there any page in any of your briefing that addresses this? We do not address the arithmetic issue that I'm raising now. Obviously, we do raise objections to the guidelines and procedural error. Okay. And then I guess I will ask you, I mean, waiver is one argument which I suppose is the way we usually characterize it if you don't raise it in your appellate brief and we have discretion to notice it or not. But there's a separate question, which is the plain error in the forfeiture thing. You may say it's so plain that it ought to be noticed, but the plainness of an error is only the second of four prongs in Verlano. I agree with that. And at that point, we're not talking waiver, we're talking forfeiture. Do you want to just address? Yeah. And again, this is something I've only had the ability to do cursory research on, Judge Nardini, but I would direct you to the Supreme Court's decision in 2018, Rosales-Morales against the United States. It's 138 Supreme Court 1897, where the court looks at an unpreserved procedural sentencing error and holds that in the ordinary case, that's not an error that ought to be overlooked because it is. I'm sorry. I didn't mean to interrupt. I apologize. Please. Because it goes to substantial rights. Well, it depends on the errors, right? I mean, are you saying that it's undisputed or you think it's undisputed that she simply misspoke and that everybody knew it was 29, there's no claim it should be anything other than 29, that she just sentenced as though it was 31? I believe when the government looks at that and when the court looks at it, it'll be very clear it was simply a counting error, but it wasn't a misspeak in the sense that she actually then uses the level 31 guideline range of 108 to 135. She, later on, Judge Abrams, in the sentencing transcript, looks at other cases that have comparable guideline ranges in order to calibrate her own decision. So it does infect the analysis. And again, the Supreme Court case I cited is, on my quick reading, quite similar in that it involved a relatively, an even smaller guideline range discrepancy, but the court held that it was appropriate to remand for resentencing. Now, was it a comparable downward variance? I think not. I think in that case, the sentence the district court selected was actually at the intersection points of the two ranges. Yeah, here we have a year and a day. And so is the argument seriously that had the guidelines arrangement at level 29 instead of level 31, that the sentence would have been lower than a year and a day? I, look. Especially since she went to the point of saying that she's doing a substantial downward variance. I think that there were a lot of problems here, and obviously I haven't had an opportunity to talk about all of them. But it's very clear that Judge Abrams believed that a substantial variance was appropriate, but she also correctly began with the guideline range. And if the guideline range starts at a substantially lower place, as it ought to have. She may not have found that the guidelines was an improper, inordinate emphasis on the law, right? So, okay. You're saying we should deal with this now rather than waiting for a 2255 that alleges ineffective assistance. I mean, I hate to cast aspersions on myself, but there's not a more clear error than accounting error. And everyone sat in the courtroom and no one noticed it. Everyone's read these papers many times and no one noticed it. But it is the plainest error there could be. It's simply an arithmetic error. Just remind me, am I correct that getting a year and a day entitles your client to good time credits, but if you get a year, you're not. So actually you'd have to get a pretty substantial drop below a year and a day for a lower sentence  That's correct, Judge. That's why... Can you remind me what the delta is these days? Is it 10 months or how far down do you have to drop before a shorter sentence is in fact a longer sentence? I think it's 85%, so whatever that calculation is. Yeah, all right. Obviously, I wanted to bring this to the Court's attention as soon as I noticed it. This is, of all of the issues that we identify, the one that in some senses makes the least difference. However, I think in light of the other sentencing errors that we believe are equally clear, it makes sense to remand to the District Court to make appropriate fact-finding, calculate the guidelines correctly, and then sentence Mr. Archer however she deems appropriate if the Court is not going to overturn his conviction entirely. And obviously, I haven't yet talked about those arguments. I'm already substantially over time, but I would love to speak to any or all of those arguments if the Court would like to hear them. Well, let me see if my colleagues have any questions. Judge Nardini? No. No. All right, well, you've got two minutes for a rebuttal, so let's see what the government has to say. Mr. Rothschild? Thank you. May it please the Court, my name is Sam Rothschild. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal. This Court should affirm the judgment. I'd like to address the sentencing point, as well as answer any questions that the Court may have. I think Judge Sullivan has a question. Before we get to the sentencing, can we talk about the hypotheticals posed by Mr. Schwartz during the sentencing hearing? Can you explain why you think the jury couldn't have reached a guilty verdict without being able to reasonably foresee the full extent of losses to the victim? Well, Your Honor, I'm not sure that that was the hypothetical. I think here, the jury reached a verdict of guilty as charged by Judge Abrams in this case. And Judge Abrams' role at sentencing was to take that guilty verdict, which had implicit in it only that the defendant had the requisite criminal mens rea, was aware of the fraud. And Judge Abrams' role at sentencing was to determine what was reasonably foreseeable to the defendant by a preponderance of the evidence. And here, she went through that evidence and pointed to the ample places in the record that supported the proposition that the full extent of the fraud, in terms of temporal scope and also loss amount and number of victims, was reasonably foreseeable to him. If I may, just on the point that was just raised this morning, the government is looking into the facts. But I'll note that I think that Judge Nagini is exactly right. It was waived in the briefing before this court. It was forfeited in the district court. There's a harmlessness error review that would apply here. And certainly, on plain error review, it's difficult to see how the defendant's substantial rights would have been impacted in light of the far below guideline sentence that Judge Abrams imposed, taking into account that the year plus a day gets the defendant the good time credit that Judge Nagini pointed out. Happy to answer any questions that the panel might have. Otherwise, we'd rest on our submission and ask that the judgment be affirmed. Thank you. Well, I guess I'll ask a question. I mean, the language in the warrant that refers to other crimes, what is the purpose or the freight that that language carries? Your Honor, I think it's just surplusage, or you're saying that it has some other purpose? Well, Your Honor, I think that this court's precedent dictates that the warrant be read as a whole and that broad phrases, such as among other statutes, be read to be limited by illustrative lists that follow such phrases or that precede such phrases. And so I think it may well have been some belt and suspenders type draftsmanship, but I think it's clear that under this court's precedent that in interpreting the warrant and reading the warrant, that phrase, among other statutes, is limited by the specific statutes that are listed before it, by the enumeration following that phrase of the WACPOMNY scheme. So I don't think there's any real question that that phrase is not as broad as it appears. Well, but the question for us is because we're not permitted to look beyond the face of the warrant to the application itself. I mean, how would we know that a reasonable officer would know that it only authorizes search for the WACPOMNY scheme? Well, I think two responses to that, Your Honor. First, I think you're right in that in analyzing the particularity of the warrant under the Fourth Amendment, you look at the face of the warrant itself. But I think that you look at the warrant as a whole. And again, I think there are aspects of the warrant that sufficiently limit the breadth of that phrase that it no longer becomes problematic. But then I think, Your Honor, is also pointing toward the good faith exception, where I think the court can look beyond the face of the warrant. In fact, there's cases like the Romaine case from the circuit that says you can look at the affidavit in support of that warrant to assess what a reasonably well-trained officer would have understood. And notably here, the affidavit actually omits the among other statutes language that is viewed as problematic in the warrant itself. Well, I was just wondering, I mean, is it designed to allow the government to use this evidence for other crimes in the future? And the thought is if you don't have this language, it will prevent you from charging additional things based, at least in part, on some of this evidence. I don't think so, Your Honor. I think if the government became aware of other crimes that it hadn't been aware of when seeking the warrant, the government would have needed to and would have obtained a second warrant for evidence of other crimes. Again, I think that's what I'm saying. No, I'm saying if you do the warrant, you have evidence, and then you say, oh, the evidence here could also be used to charge something different, in other words, securities fraud as opposed to regular fraud under Title 18, that this language is designed to preserve the ability to do that. But you're not saying that. I suppose that that's possible, Your Honor. I think what's important here is that this warrant was clearly geared toward the WAC-POMNY scheme, and I don't think there's any argument that the government sought to use this warrant or anything seized pursuant to this warrant for anything other than proving the WAC-POMNY scheme. OK, thank you, Mr. Rothschild. Mr. Rothschild will now hear from Mr. Schwartz for the two minutes of rebuttal. Thank you. With respect to the sentencing point, Judge Perez, I think you're exactly correct that there are a number of ways that a jury could have convicted, given the instructions that the court gave them, that didn't entail Mr. Archer having knowledge about the investment advisor clients. To be clear, I just asked. I'm not. Well, I think you're right to ask the question, because at sentencing, of course, I gave the most extreme hypothetical, the one that would have resulted in no loss amount and no victims. In our brief here, we give some other examples. For example, it would have been entirely consistent with the court's instructions and the way the government argued the case to the jury for the jury to convict, finding, for example, that Mr. Archer joined the scheme during the second bond issuance when he actually purchased some of the bonds. That would have knocked about $15 million off the loss amount, had that been the finding. It would have been perfectly plausible for the court to find or for the jury to convict on the basis of defrauding the WLCC without knowledge of the investment advisor clients. And that would have knocked off the number of victims enhancements. So there are a number of ways consistent with the charge that the jury could have convicted. Now, this court recognized that principle in cases like Peroni and also Lani, which we cite in our reply brief. The government doesn't deal with these at all, but in conspiracy and broad fraud cases, juries are expressly instructed that they can convict in a number of ways. And a defendant cannot be held liable for the full sweep of the conspiracy absent specific findings. Lani, for example, is a drug case, but there the defendants were indicted for a conspiracy that involved a certain quantity of drugs, but the jury didn't make special findings with respect to each defendant. And this court remanded and held, no, you have to make specific findings as to each individual defendant. That's what ought to have happened here, and I think it would have resulted quite clearly in Judge Abrams not holding Mr. Archer responsible for the complete loss amount and the complete number of victims. I see him over time, but I can say two words about the warrant if you want to hear it. Go ahead. With respect to the warrant, I think, Judge Sullivan, the concerns that underlie your question are correct. The warrant here on its face authorized a search with respect to any kind of crime for evidence of any kind of crime. So the canon of construction that my friend points out that says that broad phrases are limited by an illustrative list doesn't work, whereas here the illustrative list includes evidence of crime and communications concerning crime. This is almost exactly like the warrant that this court held was facially overbroad and galping. Well, I mean, what we typically do is then we excise those portions that are overbroad to see whether it works and then cut out any evidence that might've been seized based on what exceeded the language that was necessarily specific. That's right. And you haven't proffered anything, I don't think, to say what evidence should have been suppressed as a result of that. You're asking for a blanket suppression of all evidence and just basically throwing out the entire warrant, right? Well, our view is that this warrant is not severable under the principles articulated in Galpin because there aren't clauses here that work independently. There's overbreath in this sort of catch-all with other crimes, and then there's also overbreath in the list. So even if you look at the government's argument on severance, they say get rid of other crimes and what is left works, but that's not true. What is left is a warrant that says you can get the evidence and instrumentalities of wire fraud, securities fraud, conspiracy, including, and then a list, and that list includes evidence of crime and communications concerning crime. So even under their severance analysis, this warrant isn't severable. Now, they never made this argument below, and so the district court- So the district didn't say evidence of the crimes listed, that that's a fatal- No, I think if a warrant simply said evidence of securities fraud, that would be overbroad as well. I think the government in their brief acknowledges that principle. That's that footnote five, I think. If the warrant said, if the warrant didn't include either the other crimes or evidence of crime, communications concerning crime, and it simply said the government can seize evidence of a scheme to defraud the WLCC, that would be a different thing, but under this court's severance analysis as articulated in Galpin, the warrant is not susceptible to that. Again, this is not an argument made below, so Judge Abrams was never given the opportunity to make findings with respect to severance. I'd submit that under this court's cases, including George, that would be the appropriate thing to do if the court believes that severance may be possible to remand and let the district court do that analysis in the first instance, because there were dozens and dozens of emails that were introduced pursuant to this warrant. The government doesn't even argue that the introduction was harmless. If this warrant falls, or if any part of it falls, it knocks out large portions of the evidence against Mr. Archer, which was entirely circumstantial to begin with. So for that reason as well, we think a remand is appropriate to let Judge Abrams do the appropriate fact-finding. All right. Thank you, Mr. Schwartz. We will reserve decision.